IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAII FOREST & TRIAL, LTD, | ) | Civ. No. 07-00538 HG-BMK |
| | ) | |
| Plaintiff, | ) | FINDING AND |
| | ) | RECOMMENDATION THAT |
| vs. | ) | PLAINTIFF'S MOTION FOR |
| | ) | DETERMINATION OF GOOD |
| TOM DAVEY, et al., | ) | FAITH SETTLEMENT WITH |
| | ) | FORD MOTOR COMPANY AND |
| Defendants. | ) | PENNTEX INDUSTRIES, INC. BE |
| _____ | ) | GRANTED |

FINDING AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT WITH FORD MOTOR
<u>COMPANY AND PENNTEX INDUSTRIES, INC. BE GRANTED</u>

This case arises out of Plaintiff Hawaii Forest & Trial, Ltd.'s ("Hawaii Forest") purchase of two new 2006 Ford Van Terras for use in its eco-tourism business. Shortly after the purchase, the vans exhibited a number of persistent defects, which required several repairs and caused the vehicles to be out-of-service. As a result, Hawaii Forest filed this lawsuit against Defendants Tom Davey, Davey Coach Sales Inc. (collectively, "Davey"), Ford Motor Company, Penntex Industries, Inc., Klam America, and Turtle Top, Inc. Hawaii Forest subsequently entered into settlements with Ford and Penntex.

Before the Court is Hawaii Forest's Motion For Determination of Good Faith Settlement, in which Ford and Penntex join. Defendants Davey and

Klam oppose the Motion.[1]  The Court heard this Motion on March 12, 2009.  After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, the Court FINDS and RECOMMENDS that Hawaii Forest's Motion be GRANTED.

## FACTUAL BACKGROUND

Hawaii Forest is an eco-tourism business operating on the Big Island.  In 2006, it purchased two new Ford Van Terras from Davey Coach to carry tour groups.  Ford assembled the chassis for each vehicle, and Penntex alternators were initially installed in them.  Penntex did not select which alternators to use or install them into the vans.  Other accessories and after-market devices were installed in the vans, including Klam retarders.

Hawaii Forest received the vans on July 7, 2006.  The vans thereafter exhibited a number of defects, which caused them to be out-of-service for days or weeks at a time.  The alternators had to be replaced thirteen times, and other problems related to the vehicles' consoles falling apart.

After numerous unsuccessful attempts to repair the vans, Hawaii Forest made a demand on Defendants for reimbursement of the vans' full purchase price and its out-of-pocket costs for various repairs.  Hawaii Forest also proposed

---

[1] Defendant Turtle Top, Inc. did not file a response to the instant Motion.

to resolve the dispute via arbitration. Defendants refused to reimburse Hawaii Forest or to participate in arbitration, which resulted in Hawaii Forest filing this lawsuit.

Hawaii Forest, Davey, and Klam hired investigators to inspect the two vans. Hawaii Forest's expert, William P. Guentzler, concluded to "a reasonable degree of scientific certainty" that the vans

> experienced electrical problems because the DC ampere draw (or electrical current demand) of each vehicle exceeds the output capability of the alternators originally installed by the coach builder. This excessive amperage draw causes both alternators to completely fail, resulting in a total loss of on-board DC battery power, rendering these vehicles defective in their use, value and safety.

(Davy Opp. at Ex. 1.)

Klam's expert, Jacob Darakjian, agreed that the vans' electrical demand exceeded the output capacity of the alternators:

> Based on the tests and measurements performed on both vehicles, I found the charging systems not to be adequate in providing ample amperage to service the manufacturer's accessories and the after market devices of which these vehicles are equipped with. . . . There is . . . evidence that collectively, the electrical components and systems would well exceed the 190 amp alternators which were originally installed on the vehicles[.]
> . . . .
> The problems with the subject vehicles is the result of an installer not taking into consideration the sum of amperage draw for the basic chassis and each electrical

3

> component added to said chassis thereafter.  The two
> subject vehicles, based on the measurements obtained,
> will not operate for long periods without electrical
> problems as the charging systems cannot fulfill the
> amperage requirements.

(Klam Opp. at Ex. H.)

Davey asked Otto Laboratories, Inc. to inspect the vans.  On December 18, 2008, Joseph Yates visually examined the vans, noted the electrical components fitted, and documented the general condition of each vehicle's wiring system.  Otto Laboratories' letter to Davey's counsel dated January 6, 2009 does not suggest a reason for the van's failures, but notes that a report of findings would be submitted after conducting further operational testing on the vans.  (Davey Opp. at Ex. 2.)

Hawaii Forest eventually entered into settlement agreements with Ford and Penntex for $7,500 and $5,000, respectively.  It now moves for a determination that the settlements were made in good faith and for approval of the settlements.

## STANDARD OF REVIEW

Under Hawaii law, "[a] determination by the court that a settlement was made in good faith shall:  (1) Bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor, except those based

4

on a written indemnity agreement; and (2) Result in a dismissal of all cross-claims filed against the settling joint tortfeasor or co-obligor, except those based on a written indemnity agreement." Haw. Rev. Stat. § 663-15.5(d).  A court must examine the totality of the circumstances to determine whether a settlement has been made in good faith for the purposes of § 663-15.5.  Troyer v. Adams, 102 Haw. 399,  427, 77 P.2d 83, 111 (2003).  "A nonsettling alleged joint tortfeasor or co-obligor asserting a lack of good faith shall have the burden of proof on that issue."  Haw. Rev. Stat. § 663-15.5(b).

## DISCUSSION

Hawaii Forest, Ford, and Penntex argue their settlements were made in good faith and that there is no evidence of collusion.  Klam counters that the settlements are "not in good faith because it leaves Klam potentially responsible for the vast majority of Plaintiff's claimed damages." (Klam Opp. at 3.)  Davey maintains that "outstanding questions concerning the nature of any defect, the cause of the defect and the responsible party for that defect" preclude a finding that the settlements were reached in good faith.  (Davey Opp. at 12.)

Under Hawaii law, "any party shall petition the court for a hearing on the issue of good faith of a settlement entered into by the plaintiff . . . and one or more alleged tortfeasors or co-obligors."  Haw. Rev. Stat. § 663-15.5(b).  In

Troyer, the Hawaii Supreme Court adopted a "totality of the circumstances" approach for determining whether a settlement was made in good faith under Haw. Rev. Stat. § 663-15.5.  The court noted that the statute's legislative intent focused more on "encouraging settlements than ensuring the equitable apportionment of liability."  Troyer, 102 Haw. at 426, 77 P.2d at 110.  Indeed, the drafters "intended the 'good faith' provision merely to provide the court with an opportunity to prevent collusive settlements aimed at injuring the interests of a non-settling joint tortfeasor."  Id.

      According to the Troyer court, in determining whether a settlement was made in good faith,

> the trial court may consider the following factors to the extent that they are known at the time of settlement: (1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medial malpractice, product liability, etc.; (2) the realistic approximation of total damages that the plaintiff seeks; (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial; (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

102 Haw. at 427, 77 P.2d at 111.  These factors are not exclusive, and trial courts may consider any other relevant factor.  Id.

The burden of proof is on Davey and Klam to establish that the settlements were not made in good faith.  Haw. Rev. Stat. § 663-15.5(b).  However, none of them produce any evidence showing collusion or that the settlements were aimed at injuring their interests.  Troyer, 102 Haw. at 426, 77 P.2d at 110.

Hawaii Forest settled its claims against Ford for $7,500 and settled its claims against Penntex for $5,000.  Hawaii Forest decided to settle for these nominal amounts after concluding that Davey and Klam "are the two primary defendants in this case." (Hawaii Forest Reply at 6.)  According to Hawaii Forest, "it is clear that most of the damages in this case are attributable to Klam and/or Davey."  (Id. at 6-7.)  Indeed, Ford simply built the chassis and Penntex supplied the alternators.  Neither of them selected or installed after-market devices that increased the vans' electrical demand.  Davey, however, made representations about the vehicles to Hawaii Forest and sold it the vans with after-market devices. (Hawaii Forest Reply at 7.)  Klam also installed braking retarders into the vans "without advising either Davey or Hawaii Forest that larger alternators would be needed."  (Id.)

The submitted expert reports also support Hawaii Forest's position that Ford and Penntex are minimally responsible for its injuries. Hawaii Forest's expert concluded that the vans' electrical demand "exceed[ed] the output capability of the alternators originally installed by the coach builder." (Davey Opp. at Ex. 1.) Klam's expert agreed that "the electrical components and systems would well exceed the 190 amp alternators which were originally installed on the vehicles." (Klam Opp. at Ex. H.) Klam's expert added that the "problems with the subject vehicles is the result of an installer not taking into consideration the sum of amperage draw for the basic chassis and each electrical component added to said chassis thereafter." (Id.) Although the experts agree that the alternators were insufficient at meeting the vans' high electrical demand, they did not conclude that the alternators were defective in any way. Penntex merely supplied the alternators, as Ford merely supplied the chassis. Based on the expert reports, Ford and Penntex are minimally, if at all, responsible for the vans' repeated failures. The nominal settlement amounts accurately reflect their limited exposure for liability.

Hawaii Forest made a strategic decision to guarantee some sort of recovery from Ford and Penntex even though no expert reports or other evidence suggest that they are responsible for the vans' failures. Hawaii Forest, Ford, and Penntex also recognized that the costs of litigating this multi-party action to trial

would be high, as Davey concedes. (Davey Opp. at 10.) Further, neither Davey nor Klam point to any relationship between Hawaii Forest, Ford, and Penntex that is conducive to collusion.

Davey argues that this Court "cannot reasonably assess the factors set forth in Troyer," given the "outstanding questions concerning the nature of any defect, the cause of the defect and the responsible party for that defect." (Davey Opp. at 7-12.) However, discovery has long been ongoing and Otto Laboratories, which Davey retained to investigate the vans, inspected the vans in December 2008. Although Hawaii Forest and Klam submitted expert reports on the cause of the vans' failures, Davey did not. Further, the Troyer court made it clear that this Court should consider the factors "to the extent they are known at the time of settlement." 102 Haw. at 427, 77 P.3d at 111. Thus, this Court is free to consider the settlements without waiting for further discovery.

In sum, after considering the relevant Troyer factors, the Court FINDS that the settlements between Hawaii Forest, Ford and Penntex were made in good faith within the meaning of Haw. Rev. Stat. § 663-15.5, and that there is good cause for such determination. The Court therefore RECOMMENDS that Hawaii Forest's Motion For Determination of Good Faith Settlement be GRANTED, and all claims against Ford and Penntex be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS that Hawaii Forest's Motion For Determination of Good Faith Settlement with Ford and Penntex be GRANTED.

DATED:  Honolulu, Hawaii, April 16, 2009.

IT IS SO FOUND AND RECOMMENDED.



 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Hawaii Forest & Trial, Ltd. v. Tom Davey, et al., Civ. No. 08-00538 HG-BMK; FINDING AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT WITH FORD MOTOR COMPANY AND PENNTEX INDUSTRIES, INC. BE GRANTED.